UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HOME FEDERAL SAVINGS BANK,<br>    *Plaintiff/Counterclaim Defendant*, | )<br>)<br>) | |
| *vs.* | ) | 1:10-cv-0999-JMS-TAB |
| TICOR TITLE INSURANCE COMPANY,<br>    *Defendant/Counterclaimant.* | )<br>)<br>)<br>) | |

## **ORDER**

Presently before the Court in this title-insurance-coverage dispute are cross motions for summary judgment by Plaintiff / Counterclaim Defendant Home Federal Savings Bank ("Home Federal") and Defendant / Counterclaimant Ticor Title Insurance Company ("Ticor"). [Dkt. 28, 43.]

### I.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would, as a matter of law, conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial and cannot rely upon the mere allegations or denials in the pleadings.

1

Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 330. The key inquiry is the existence of evidence to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

That cross-motions for summary judgment have been filed does not automatically mean that all questions of material fact have been resolved. *Franklin v. City of Evanston*, 384 F.3d 838, 842 (7th Cir. 2004). The Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion. *Id.* at 483.

After having assessed the claims of the parties in accordance with the standards outlined above, the Court concludes that Ticor is entitled to summary judgment. Therefore, in what follows, the Court makes all reasonable factual inferences in favor of Home Federal. *See Celotex*, 477 U.S. at 330 n.2.

## II.
### UNDISPUTED MATERIAL FACTS

The parties agree that the facts relevant to their cross-motions are not in dispute. [Dkt. 45 at 1 n. 2; 48 at 2.]

**A. The Title Insurance Policy**

In 2006, Home Federal began financing a commercial construction project for Altra Indiana, LLC ("Altra"). [Dkt. 29-1 ¶3.] To guard against the possibility that the real estate would not be available to actually serve as collateral for the loan, Home Federal purchased a title insurance policy from Ticor, effective in December 2006. [*Id.* at ¶4.]

The policy's coverage grant began as follows:

> **SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULA-**

2

> **TIONS, TICOR TITLE INSURANCE COMPANY,** a California corporation insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of: [enumerated covered risks, none of which is claimed to be at issue here].

[Dkt. 44-1 at 2 (emphasis in original).] The policy also provided for defense costs against claims adverse to the interests protected under the policy. [*Id.* at 3.]

Among the items excluded from the policy were "[d]efects, liens, encumbrances, adverse claims or other matters…created, suffered, assumed or agreed to or by the Insured claimant…." [*Id.*]

As is relevant here, Home Federal also paid for a mechanic's lien endorsement effective December 2006, which is the focus of this action and which reads as follows:

> Anything contained in said policy to the contrary notwithstanding, the Company insures against loss or damage incurred by the insured by reason of the enforcement or attempted enforcement of any statutory lien for labor or material arising from construction contracted for and/or commenced on the land prior to, at, or subsequent to the effective date of said policy, and any extension of said date, as having priority over, or sharing on a parity with, the lien of the insured mortgage for that portion of the proceeds of the loan secured thereby advanced for the purpose of paying the costs of the acquisition of the land and the development of and the construction of improvements on the land, including by [sic] not limited to the cost of labor or materials incurred in connection therewith. At the time of each disbursement of the proceeds of the loan, the title must be searched by Royal Title Services, Inc., down to such time, for possible liens or objections intervening between the date hereof and the date of such disbursement.
>
> This endorsement is made a part of the policy or commitment and is subject to all the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provision of the policy or commitment and prior endorsements, if any nor does it extend the effective date of the policy or commitment and prior endorsements or increase the face amount thereof.

[*Id.* at 55.]

Per Schedule B, the amount of insurance that the policy provided depended upon the amount of money actually disbursed to fund the construction, up to a maximum of $95,500,000:

> Pending disbursement of the full proceeds of the loan secured by the mortgage set forth under Schedule A, this commitment/policy insures only to the extent of the amount actually disbursed, but increases up to the face amount of the commitment/policy [i.e. $95,500,000] as disbursements are made in good faith and without knowledge of any defects in or objections to title. At the time of each disbursement of the proceeds of the loan, the title must be searched down to such time, for possible liens or objections intervening between the date hereof [i.e. December 2006] and the date of such disbursement, but neither the date of this commitment/policy, nor any other provision, shall be deemed changed by virtue of such disbursement. (LOAN POLICY ONLY)

[Dkt. 44-1 at 11.]

### B. Updates to Schedule B

When Home Federal distributed additional funds that the mortgage would secure, it would (through a servicer) request Ticor to update the policy, which Ticor did after performing an updated title search and receiving waivers of lien from each contractor paid with any disbursed funds. [Dkt. 44-2 ¶¶7-9.]

Two such updates are relevant to this action, Updates 15 and 16.

Update 15 issued September 24, 2008, and provides in part:

> The Company insures that, as shown by the public records, there are no defects in, or liens, or encumbrances on, the title to said real estate or interest existing as of September 5, 2008 at 8:00 a.m., other than as shown in said policy, or prior endorsements, except [a list of new encumbrances of record that were made part of Schedule B]….
>
> Except to the extent expressly stated, [the endorsement] neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face thereof.

[Dkt. 44-1 at 44-45.]

Home Federal's servicer "did not request [Ticor] to issue the Policy Update No. 16" because no additional funds had been disbursed, and instead only requested that Ticor "perform a title search on the Project," suspecting that new liens had been filed against the real estate. [Dkt. 45-1 ¶¶5-8.] Nonetheless, Ticor issued Update 16, which disclosed the new lien relevant to this action, providing in part:

> The Company insures that, as shown by the public records, there are no defects in, or liens, or encumbrances on, the title to said real estate or interest existing as of October 13, 2008 at 8:00 a.m., other than as shown in said policy, or prior endorsements, except [a list of new encumbrances of record that were made part of Schedule B]….
>
> **The following is hereby added to and made part of [the title insurance policy], Schedule B, Special Exceptions:**
> - NOTICE OF INTENTION TO HOLD MECHANIC'S LIEN in the amount of $6,178,032.00 filed by F. A. Wilhelm Construction Co., Inc., dated September 26, 2008 and recorded September 26, 2008….
>
> Except to the extent expressly stated, [the endorsement] neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face thereof.

[Dkt. 44-1 at 46-48 (emphasis in original).]

**C. The Wilhelm Claim**

Altra had selected F.A. Wilhelm Construction Co., Inc. ("Wilhelm") to serve as the general contract for the construction project, but terminated Wilhem in mid-2008—and according to Wilhem, leaving more than $6 million in construction bills outstanding. [Dkt. 44-4 at 9-10.] Consequently, Wilhelm filed the mechanic's lien against the property on September 26, 2008. [Dkt. 44 ¶9.] By the time the loan went into foreclosure, Wilhelm had still not been paid. Consequently, Wilhelm filed a counterclaim, alleging in part as follows:

> Pursuant to Ind. Code § 32-28-3-2, Wilhelm is entitled to enforce its lien claim (a) against the entire land and any and all improvements comprising the Real Estate, and (b) by removal and sale of

> the specific work and improvements for which Wilhelm provided labor and/or materials and without impairment by mortgage foreclosure or forfeiture of lease

[Dkt. 44-4 at 10 ¶10.] In its prayer for relief, Wilhelm requested:

> A determination establishing the priority of such Mechanics Lien (sic) in respect of (a) the entire Real Estate and all improvements and (b) the specific building, work and improvements as to which Wilhelm provided labor and/or materials.

[*Id.* at 11 ¶C.]

### D. This Action

Ticor refused to indemnify Home Federal for Wilhem's counterclaim—which was ultimately settled without contribution from Ticor—or to defend Home Federal against the counterclaim. [Dkt. 29-2 at ¶6; dkt. 29-6 at ¶5.] Through the present action, Home Federal sued Ticor for breach of the duty to defend (Count I), breach of the duty to indemnify (Count II) and bad faith (Count III). The cross-motions for summary judgment are specifically addressed to the duty to defend and the duty to indemnify.

## III.
### DISCUSSION

Under Indiana law, which the parties agree controls, insurance policies are subject to the same rules of construction as other contracts. *Commercial Union Ins. v. Moore*, 663 N.E.2d 179, 180 (Ind. Ct. App. 1996). The Court must read an insurance policy as a whole; it can neither extend coverage beyond what is provided nor rewrite unambiguous language. *See Shelter Ins. Co. v. Woolems*, 759 N.E.2d 1151, 1155 (Ind. Ct. App. 2001). An insurance policy is ambiguous only if reasonable people could disagree as to the meaning of its terms; however, an ambiguity does not exist simply because the insured and the insurer disagree about the meaning of a provision. *Eli Lilly & Co. v. Zurich American Ins. Co.*, 405 F. Supp. 2d 948, 953 (S.D. Ind. 2005).

Whether an insurer has a duty to defend a particular lawsuit is determined by examining the allegations of the underlying complaint. *Transamerica Ins. Services v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991). A duty to defend exists only if proof of the allegations could lead to coverage. "[W]hen the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind. Ct. App. 1980). The duty to defend is broader than the duty to indemnify. *Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991). Therefore, if an insurer does not have a duty to defend, it follows also that the insurer does not have a duty to indemnify. *See e.g., Ace Rent-A-Car, Inc. v. Empire Fire & Marine Ins. Co.*, 580 F. Supp. 2d 678, 690 (N.D. Ill. 2008) (Indiana law); *Erie Ins. Exchange v. Kevin T. Watts, Inc.*, 2006 WL 3755329, *3 (S.D. Ind. Dec. 19, 2006).

The Court will begin with the duty to indemnify, before proceeding to the duty to defend.

**A. Duty to Indemnify**

While the parties raise other arguments, the Court finds that this insurance coverage dispute ultimately boils down to one question: Could Home Federal withhold disbursement of the funds that could have satisfied Wilhem's claims yet still seek to make Ticor pay when Wilhem asserted a mechanic's lien to recover for the unpaid work?

Home Federal says yes, per the terms of the mechanic's lien endorsement. In its view, although the policy excludes coverage for "liens…created, suffered, assumed or agreed to by the Insured claimant," [dkt. 44-1 at 3], that exclusion does not apply to mechanic's liens, like the one that Wilhem asserted, for two reasons. First, the mechanic's lien endorsement provides coverage "[a]nything contained [in the Policy] to the contrary notwithstanding." [*Id.* at 55.] So, Home Federal says, all exclusions in the policy fall away with respect to assertions of mechanics' liens.

Second, while cases have upheld denials of mechanic's lien coverage when lenders fail to distribute funds, on the grounds that the lenders' actions caused the liens, *see Brown v. St. Paul Title Ins. Corp.*, 634 F.2d 1103 (8th Cir. 1980); *Banker's Trust Co. v. Transamerica Ins. Co.*, 594 F.2d 231 (10th Cir. 1979), Home Federal argues that those cases are inapplicable here. Unlike in those cases, Home Federal argues that it never promised Ticor that it would disburse the funds, implicitly or explicitly.[1] Thus, it says, it could withhold them and effectively shift the burden of paying a contractor to Ticor. *See Mid-South Title Ins. Corp. v. Resolution Trust Corp.*, 840 F. Supp. 522, 527-28 (W.D. Tenn. 1993) (finding coverage in favor of lender that did not fully disburse loan funds because "absent a contractual relationship ancillary to the insurance contract at issue, there was no implied duty between these parties that all committed loan funds must have been expended").

Home Federal's positions are, however, untenable. Its view of the potency of the "notwithstanding" language of the mechanic's lien endorsement overlooks later language in the endorsement. Not only does the endorsement make clear that its grant of coverage is "subject to all the terms and provisions" of the policy, but it repeats that the endorsement, "[e]xcept to the extent expressly stated…[, does not] modif[y] any of the terms and provisions of the policy." [Dkt. 44-1 at 55.] The endorsement says nothing about expressly lifting the prohibition against cover-

---

[1] Home Federal has not argued that, assuming that it had a duty to pay, the circumstances of its failure to pay here fall outside the scope of the exclusion. *See contra Brown*, 634 F.2d at 1107 n.8 ("The cases discussing the applicability of the 'created or suffered' exclusion generally have stated that the insurer can escape liability only if it is established that the defect, lien or encumbrance resulted from some intentional misconduct or inequitable dealings by the insured or the insured either expressly or impliedly assumed or agreed to the defects or encumbrances in the course of purchasing the property involved. The courts have not permitted the insurer to avoid liability if the insured was innocent of any conduct causing the loss or was simply negligent in bringing about the loss." (citations omitted)).

8

age for having caused the loss that Home Federal seeks to shift to Ticor. No reasonable person would, therefore, understand it to have done so; the exclusion stands.

While Home Federal did not have a separate disbursement agreement, the Court finds that fact no basis to use to distinguish *Brown* and *Banker's Trust*. The policy at issue here specifically contemplated that Home Federal's coverage would be tied to its actual disbursement of loan funds. Schedule B limited coverage "only to the extent of the amount actually disbursed, …up to the face amount of the commitment/policy…." [Dkt. 44 at 11.] And the mechanic's lien endorsement further provides that coverage would only exist for mechanics liens claiming parity with or superiority to "the lien of the insured mortgage for that portion of the proceeds of the loan secured thereby advanced for the purpose of paying the costs of…the construction of improvements on the land." [*Id.* at 55.]

Because all disbursements prior to the Wilhelm lien have been fully accounted for with waivers of mechanic's liens, [dkt. 48-1 ¶¶7-9], Home Federal seeks to obtain a windfall—avoiding more than $6 million construction bills without having risked any of its own funds. Doing so is fatally inconsistent with the policy at issue.

### B. Duty to Defend

Because, for reasons expressed above, Ticor had no duty to indemnify Home Federal with respect to the Wilhelm claim, it necessarily had no duty to indemnify Home Federal either. *Ace Rent-A-Car*, 580 F. Supp. 2d at 690.

### IV.
#### CONCLUSION

For the foregoing reasons, the Court **DENIES** the Home Federal's Motion for Partial Summary Judgment on Counts I and II. [Dkt. 28.] The Court further **GRANTS** Ticor's Cross-Motion for Partial Summary Judgment on Counts I and II. [Dkt. 43.] Because Count III, which

9

alleges bad-faith, is predicated on Ticor's liability, the Court further **DISMISSES** Count III, the only remaining count, of the Home Federal's Complaint for failure to state a claim. [Dkt. 1.] Judgment will enter accordingly.

Inasmuch as the briefs were developed such that oral argument was unnecessary, Ticor's motion for oral argument, [dkt. 49], is **DENIED**.

09/27/2011

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Raymond A. Basile
MERCER BELANGER, P.C.
rbasile@indylegal.com

Michael D. Chambers
TAFT STETTINIUS & HOLLISTER LLP
mchambers@taftlaw.com

Tammy Lynn Ortman
MERCER BELANGER, P.C.
tortman@indylegal.com

Richard Charles Richmond III
TAFT STETTINIUS & HOLLISTER LLP
rrichmond@taftlaw.com